IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Frank C. Brown, Jr., et al.,    :

        Plaintiffs,    :    Case No. 2:10-cv-880

  v.    :    JUDGE SARGUS
                   MAGISTRATE JUDGE KEMP
Gilbert A. Hurwood, et al.,    :

        Defendants.    :

REPORT AND RECOMMENDATION

Plaintiff, Frank C. Brown, a state prisoner, has submitted a complaint and a request for leave to proceed *in forma pauperis*. As required by a provision of the Prison Litigation Reform Act, see 28 U.S.C. §1915(b), the Court has assessed a partial filing fee. As also required by that Act, see 28 U.S.C. §1915A(b)(1), the Court now conducts an initial screening of the complaint to determine if it is "frivolous, malicious, or fails to state a claim upon which relief may be granted ...." For the following reasons, the Court will recommend dismissal of this action under §1915A(b) as well as under 28 U.S.C. §1915(e)(2).

I. The Complaint

The following facts are all taken from Mr. Brown's complaint. The Court keeps in mind that because Mr. Brown is without counsel, his complaint must be liberally construed. See Haines v. Kerner, 404 U.S. 519 (1972).

Mr. Brown is currently incarcerated at the London Correctional Institution located in London, Ohio. He has filed this case on his own behalf and, apparently, on behalf of other inmates as well. Generally, his complaint alleges that the law library facilities and the legal assistance provided to inmates at the London Correctional Institution are inadequate and that

this inadequacy affects the ability of those inmates to exercise their constitutional right to access the courts.

More specifically, Mr. Brown claims that as soon as he got to London, the inadequacy of its law library became apparent.  He had previously been at the Mansfield Correctional Institution and thought that its library and legal assistance program was up-to-date.  He sent complaints, or "kites," to various institutional representatives but claims not to have received a satisfactory (or even a truthful) response.  He complained about, among other things, the lack of required legal books, the library schedule, non-compliance with written institutional policies, a short period of time when access to computerized legal research was not available, a shortage of typewriter ribbons, and the use of typewriters in the law library by other inmates for non-legal purposes.  As a result of these and other issues, he claims that he and other inmates have not been able to meet some court-ordered deadlines, particularly short ones.

Mr. Brown has not confined his complaints about prison law libraries to the London Correctional Institution, however.  He asserts that during his stay at London, he was temporarily transferred to the Madison Correctional Institution and to the North Central Correctional Institution, and that the libraries at both of those institutions are also inadequate.

The complaint requests that a class (apparently consisting of inmates at these three institutions) be certified.  It also sets forth claims for relief under the First and Fourteenth Amendments to the United States Constitution, asserting that because of the defendants' actions, inmates have "lost the ability to complete their legal filings and proceedings in both state and federal courts in a timely manner" and that inmates have been denied the equal protection of the laws.  As relief, Mr. Brown seeks an injunction which would require defendants to

comply with ODRC policies, to hire and train more legal assistants, to increase the physical size of the law libraries, to purchase more supplies, to keep the libraries open longer, to fire defendant Hurwood, the librarian at the London Correctional Institution, and to provide such other relief as may be needed in order to redress the constitutional violations alleged in the complaint.

## II.  The Legal Issue

It has long been recognized that inmates have a constitutional right, grounded in the First Amendment, to access the courts.  See Bounds v. Smith, 430 U.S. 817, 821 (1977) ("It is now established beyond doubt that prisoners have a constitutional right of access to the courts").  That right is not, however, unlimited nor parallel to the right of access to the courts enjoyed by non-incarcerated citizens.  Rather, prisoners have a constitutional right to access the courts only to present legal claims relating either to their convictions and sentences or to the conditions of their confinement.  "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." Thaddeus-X v. Blatter, 175 F.3d 378, 391 (6th Cir. 1999) (describing this right as a "carefully bounded right" and not a "generalized 'right to litigate,'" see id., quoting Lewis v. Casey, 518 U.S. 343, 355 (1996)).

The restriction of the right of access to the courts to these two types of claims brings with it an additional requirement relating to an inmate's standing to pursue a claim of denial of access to the courts.  Because the right in question does not confer on prisoners an unfettered right to pursue any and all types of legal claims, in order for the right to be infringed, there must be a relationship between the actions which any particular inmate claims to be unconstitutional and that

particular inmate's ability to file or pursue either a direct appeal, a collateral attack on a conviction or sentence, or a civil rights action dealing with conditions of confinement.  In Lewis v. Casey, the Supreme Court conceived of this limitation as an issue of standing, holding that any inmate pursuing a claim under Bounds v. Smith "must show actual injury" rather than simply allege or prove that he or she was "being subject to a governmental institution that was not organized or managed properly."  Lewis, 581 U.S. at 349-50.  The Supreme Court went on to determine that the right recognized in Bounds is not "the right to a law library or to legal assistance" but a narrower right - the "right of *access to the courts*."  Id. at 350.  That right is not infringed simply because a "prison's law library or legal assistance is subpar in some theoretical sense."  Id. at 351.  Consequently, in order for an inmate to have standing to bring a claim under Bounds v. Smith for denial of access to the courts, that inmate must both allege and prove that the deficiencies about which he complains had an actual impact on his ability to pursue either an attack on his conviction or sentence, or on a civil rights action dealing with allegedly unconstitutional conditions of confinement.

Because this issue is one of standing, which is a threshold issue to be addressed in any case brought in a federal court, it is the plaintiff's burden to allege, in the complaint, facts from which his or her standing might reasonably be inferred.  As the Supreme Court has observed, "[l]ike any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant."  Christopher v. Harbury, 536 U.S. 403, 416 (2002).  Although this statement was made in the context of an access to the courts claim brought by non-prisoners, the principle applies equally to prisoner suits, and

such cases are routinely dismissed when the complaint does not identify any particular lawsuit or other legal remedy which the plaintiff has been prevented from pursuing due to allegedly inadequate prison libraries or legal assistance.  See, e.g., Dellis v. Corrections Corp. of America, 257 F.3d 508, 511 (6th Cir. 2001) ("Plaintiff failed to state an access to the court claim because he did not demonstrate actual prejudice to pending or contemplated litigation"); J.P. v. Taft, 439 F.Supp. 2d 793, 804-05 (S.D. Ohio 2006); see also Odom v. Smith, 2009 WL 125286, *6 (W.D. Mich. January 16, 2009) ("Plaintiff's complaint does not set forth a specific litigation-related harm [and his] allegations fail to state a viable access to courts claim ..."). The Court must therefore determine, in light of these controlling legal principles, whether Mr. Brown has succeeded in stating a claim for denial of the right of access to the courts upon which relief may be granted or which is non-frivolous.

    III.   The Complaint Cannot Survive an Initial Screening

First, the Court notes that it may not take into account any of Mr. Brown's allegations concerning the harm that other inmates may have suffered.  Although he seeks certification of a class, with, presumably, himself as the class representative, he may not litigate claims on anyone's behalf other than himself.  This Court has repeatedly held that a pro se inmate plaintiff is not an adequate representative of a class and cannot satisfy that particular requirement of Fed.R.Civ.P. 23(a).  See Tarpley v. Jefferson County Commissioners, 2010 WL 300609 (S.D. Ohio January 19, 2010); Davis v. Strickland, 2009 WL 2047891 (S.D. Ohio July 7, 2009); Edmonds v. Timmerman-Cooper, 2009 WL 1047111 (S.D. Ohio April 17, 2009).  Consequently, the Court's examination of Mr. Brown's allegations must be limited only to the ones involving his own access to the courts.

    The complaint alleges generally that Mr. Brown has in some

cases been unable to meet short deadlines because of the restrictions to access to the law library which are detailed in his complaint.  See Complaint, ¶33.  However, he does not plead that these cases in which he has been unable to meet deadlines are the types of cases he has a right to litigate; he does not identify any of them by case name, number, or court; and he does not allege that any of them have been dismissed.  There is authority for the proposition that if the only harm suffered by a plaintiff is either the delay of a legal remedy, or the making of that remedy more difficult, the required type of injury to the right of access to the courts has not been alleged.  See, e.g., Odom v. Smith, 2009 WL 125826 (W.D. Mich. January 16, 2009).  Regardless, the complete lack of detail in the complaint concerning any specific impact of the defendants' actions or policies on any specific case which Mr. Brown either was pursuing or wished to pursue is fatal to his claim.  Further, this lack of standing cannot be cured by amendment.  See McGore v. Wrigglesworth, 114 F.3d 601, 608-09 (6th Cir. 1997); Watley v. Wilkinson, 2002 WL 31409857 (S.D. Ohio July 16, 2002).  Consequently, Mr. Brown's complaint does not state a non-frivolous or viable claim for the denial of access to the courts (nor a viable Equal Protection claim, because that claim appears wholly dependent upon his First Amendment claim), and this case should be dismissed under 28 U.S.C. §§1915(e)(2) and §1915A(b).

### IV.   Recommended Order

It is therefore recommended that this case be dismissed under 28 U.S.C. §§1915(e)(2) and §1915A(b).  If this recommendation is adopted, a copy of the complaint, this Report and Recommendation, and any dismissal order should be mailed to the defendants.

### V.   Procedure on Objections

If any party objects to this Report and Recommendation, that

party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir.1981).

>   /s/ Terence P. Kemp
>   United States Magistrate Judge